**C.M. FLOWERS, Appellant,**

v.

**CONTINENTAL GRAIN COMPANY, WAYNE POULTRY DIVISION; George's, Inc.; O.K. Feed Mills, Inc.; and Arkansas Proteins, Inc., Appellees.**

**No. 85–1672.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1985.

Decided Oct. 30, 1985.

Joel W. Price, Fort Smith, Ark., for appellant.

Charles L. Harwell, Springdale, Ark., and S. Walton Maurras, Fort Smith, Ark., for appellees.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

C.M. Flowers appeals the order of the United States District Court for the Western District of Arkansas[1] dismissing his action against the defendants for failure to state a claim on which relief may be granted. We affirm.

## I.

■ Defendant Arkansas Proteins, Inc. (Ark–Pro) is an Arkansas corporation wholly and jointly owned by defendants Continental Grain Co., George's, Inc., and O.K. Feed Mills, Inc. Ark-Pro operates a rendering plant in Ft. Smith, Arkansas. Ark-Pro purchases its raw material from its three corporate owners. Its final product is distributed in interstate commerce on the open market. On December 15, 1977, plaintiff was engaged to manage the rendering plant. In a written memorandum which confirmed oral agreements, the president of Ark-Pro promised to formalize within one year a "bonus arrangement" with plaintiff. Plaintiff alleges[2] that the defendant corporate owners of Ark-Pro not only required Ark-Pro to buy their entire output of raw materials at prices substantially above the open market price, but each year required plaintiff, in his role as manager of Ark-Pro, to pay an additional amount on "adjusted invoices" for the raw materials already purchased and consumed. The practical result of this practice was to reduce the profits of Ark-Pro to a nominal amount. Plaintiff alleges that as a result, he was unable to earn the bonus which had been promised. In 1983, when the plaintiff complained of this practice, he was told that the poor profit performance of Ark-Pro was the result of his inept manage-

ment, rather than the owners' pricing practices. Plaintiff also complains that when he informed the owners that expansion of the plant would be required in order to handle increasing amounts of materials, they refused his suggestion and that as a result he was required to work six and seven days a week in order to keep up with demand. He further alleges that these and other actions of the defendants, including an internal audit of plant operations, caused him embarrassment, emotional distress, and ultimately physical illness. In August of 1984, a thoroughly dissatisfied Mr. Flowers resigned his position, allegedly under intolerable duress. He alleges that in addition to the loss of a bonus plan promised by the defendants he was also deprived of earned vacation pay and was not refunded his vested share in a retirement plan.

In November 1984, Mr. Flowers filed suit in the District Court alleging that the defendants had violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and that he had suffered resulting injuries to business or property, recoverable in treble damages under 18 U.S.C. § 1964(c). He annexed a pendent claim under state law, based on the same operative facts as the RICO claim.

Plaintiff's amended complaint was dismissed with prejudice by the District Court on May 3, 1985, for failure to state a cause of action under RICO. This appeal followed.

## II.

The Organized Crime Control Act of 1970, Title IX (Racketeer Influenced and Corrupt Organizations) (popularly known as RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968 includes a civil remedy provision which provides: "Any person injured in his business or property by reason of a violation of § 1962 of this chapter may sue therefor in any appropriate United States district court

---

1. The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

2. In reviewing an order dismissing a complaint under Rule 12(b)(6), we accept plaintiff's mate-

rial allegations as true and construe them liberally in favor of the plaintiff. *Parkview Heights Corporation v. City of Black Jack,* 467 F.2d 1208, 1212 n. 3 (8th Cir.1972).

and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Section 1962 sets out the substantive criminal offenses upon which the civil remedies of § 1964 are based. Among them are the following:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). We look to § 1961 for a definition of "racketeering activity." Among the activities carefully defined in that section are (a) various serious felonies "chargeable under state law," including, for instance, murder, robbery, extortion, and narcotics dealing; (b) certain acts indictable under Title 18 of the United States Code (including, among others, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and interfering with interstate commerce by robbery, extortion, or threat of violence (18 U.S.C. § 1951)); (c) certain labor violations under Title 29; and (d) securities and narcotics violations punishable under federal law.

The complaint attempts to allege two types of predicate crimes in order to entitle plaintiff to civil relief under RICO. First, it is claimed that defendants have violated 18 U.S.C. § 1951, a provision commonly known as the Hobbs Act, and described in RICO itself, § 1961(1)(A), as "relating to interference with commerce, robbery, or extortion...." Section 1951 provides in pertinent part as follows:

§ 1951. Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in viola-tion of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

■ If this complaint is to come within § 1951, it must be on the theory that defendants have been guilty of extortion by threatening plaintiff with economic loss. None of the other acts prohibited in § 1951 (robbery or use of violence) is even remotely alleged. Under § 1951(b)(2), extortion requires a showing of "wrongful use of actual or threatened force, violence, or fear...." As already stated, no force or violence is claimed here, so the complaint must state a cause of action, if at all, by alleging that defendants wrongfully obtained property from the plaintiff by the use of fear. Even when the complaint is read liberally, as it must be in the present procedural context, it clearly fails to meet this requirement. Plaintiff's perhaps legitimate expectations of job security and a bonus have been disappointed, and defendants' conduct in pricing the raw materials sold by them to Ark-Pro may be unjustified under state law, but to interpret the word "fear" in the federal criminal statute prohibiting extortion to cover this kind of conduct would encompass almost any tort causing economic injury affecting interstate commerce. We decline to read the statute that broadly. See *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir.1984) (threats to sue, even if

groundless and in bad faith, may be tortious under state law but do not come within the federal extortion statute).

 The complaint also attempts to allege violations of 18 U.S.C. § 1341, which is also an eligible predicate offense under RICO, § 1961(1)(A). Section 1341 is the federal statute prohibiting mail fraud. As the District Court's opinion makes clear, this complaint falls far short of the specificity required by Fed.R.Civ.P. 9(b) when fraud is alleged. The complaint does not charge that defendants made any representations to plaintiff known at the time to be false. Thus, even if the conduct allegedly engaged in by defendants was in some general moral sense fraudulent, there is no clear allegation that plaintiff has parted with property because of his reliance on representations made by defendants that they knew were false. RICO provides civil remedies and has been broadly construed to encompass all conduct fairly within the words used by Congress, see *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), but we must not forget that a plaintiff seeking civil recovery under RICO must plead that defendants have committed two or more of the predicate criminal offenses. Criminal statutes, even when incorporated by reference in a provision for civil recovery, are to be strictly construed, see *I.S. Joseph Co. v. J. Lauritzan A/S, supra,* 751 F.2d at 267, and a defendant faced with allegations of criminal conduct is entitled to more clarity and specificity than was afforded in this rather vague complaint.

We hold that the District Court was correct in rejecting as legally insufficient the allegations of RICO violations. Count II of plaintiff's complaint, alleging a pendent claim under Arkansas law, was also dismissed by the District Court, and we construe this dismissal to be without prejudice, as is customary in respect of pendent claims when the federal claim conferring jurisdiction on the District Court is dismissed before trial.