**Woodrow J. WILSON, an individual and as shareholder of Perforaciones Altamar, Plaintiff,**

v.

**John D. ASKEW, an individual and managing shareholder of Perforaciones Altamar; Nona B. Askew, an individual; and Mike Flynn, an individual, Defendants.**

Civ. No. 88–5185.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

March 10, 1989.

Michele A. Harrington, Stanley, Harrington & Mars, Springdale, Ark., for plaintiff.

E.J. Ball, Ball, Mourton & Adams, Fayetteville, Ark., John T. Schmidt, Shirley E. Guntharp, Hall, Estill, Hardwick, Gable, Golden and Nelson, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On November 21, 1988, plaintiff initiated this action in eight counts against the defendants. Count I is styled as a RICO action against defendants, John D. Askew, Norma B. Askew, and Mike Flynn. Count II seeks an accounting against defendant, John D. Askew. Count III purports to describe various breaches of fiduciary duty by John D. Askew. Count IV sets forth allegations of common-law fraud against defendants, John D. Askew and Mike Flynn. Count V describes a conspiracy to defraud by defendants, John D. Askew and Mike Flynn. Count VI avers that all defendants converted plaintiff's assets. Count VII is styled as a "conspiracy to covert" by all defendants. Count VIII seeks to have the court impose a constructive trust upon the defendants' assets.

Defendants have moved to dismiss plaintiff's complaint on the bases that plaintiff has failed to plead a RICO action, fraud is not pled with sufficient specificity, and that plaintiff's claims are derivative and plaintiff has failed to join the necessary corporate party. These contentions will be addressed in turn.

## RICO

It is fundamental that the Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, provides a private civil action to recover treble damages for injury "by reason of" a violation of its provisions. *See* 18 U.S.C. § 1964(c). The focus of RICO is "racketeering activity," which is defined as any act "chargeable" under various state criminal laws, "indictable" under specific federal criminal statutes (most commonly mail and wire fraud), and any "offense" involving bankruptcy or securities fraud or drug-related activity "punishable" under federal law. *See* 18 U.S.C. § 1961(1).[1] 18 U.S.C.

---

1. RICO defines "racketeering activity" to mean: "(A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare fund), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2320 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–2424 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with

§ 1962 prohibits the use of income derived from a "pattern of racketeering activity" to acquire or establish an interest in an enterprise engaged in or affecting interstate commerce; the acquiring or maintaining an interest in an enterprise "through" a pattern of racketeering activity; conducting or participating in the conduct of an enterprise "through" a pattern of racketeering activity; and conspiracy to violate any of these provisions.[2]

Although largely ignored for years, 18 U.S.C. § 1964 sets out a broad civil enforcement scheme available to private litigants:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Fewer than ten reported district court RICO decisions were decided in the 1970's.

The United States Supreme Court answered some questions that had troubled and sharply divided lower courts in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). At issue in *Sedima* were two holdings of a divided panel of the Court of Appeals for the Second Circuit. 741 F.2d 482 (2nd Cir. 1984). The first such holding was that a RICO plaintiff must allege a "racketeering injury"—an injury "different in kind from that occurring as a result of the predicate acts themselves." The latter holding was that a RICO plaintiff must allege previous criminal convictions of the predicate acts of mail and wire fraud, or of a RICO violation.

Reviewing the legislative history of RICO, the Supreme Court quickly rejected the latter holding and, with regard to the former, stated that it was "somewhat hampered by the vagueness" of the concept of an "injury ... caused by an activity which RICO was designed to deter." *Sedima*, 473 U.S. at 493–94, 105 S.Ct. at 3283–84. The Supreme Court noted the obviously "unhelpful tautological" nature of the Second Circuit's holding.

Being unable and unwilling to "pinpoint the Second Circuit's precise holding," *Sedima*, 473 U.S. at 495, 105 S.Ct. at 3284, the Supreme Court merely held that RICO imposes no distinct "racketeering injury" requirement. In an attempt to clarify the nature of a RICO violation, the Supreme Court stated:

A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.

*Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285.

A footnote to this "clarification" led the lower courts to shift the focus of their confusion to another aspect of the RICO statutes:

As many commentators have pointed out, the definition of a 'pattern of racketeer-

restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act." 18 U.S.C. § 1961(1) (1982 Ed., Supp. III).

2. In relevant part, 18 U.S.C. § 1962 provides: "(a) It shall be unlawful for any person who has received any income derive, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establish-

ment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

ing activity' differs from the other provisions in § 1961 in that it states that a pattern 'requires at least two acts of racketeering activity,' § 1961(5) (Emphasis added), not that it 'means' two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.' The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that '[t]he term "pattern" itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern....' 116 Cong.Rec. 18940 (1970) (statement of Sen. McClelland). See also *Id.*, at 35193 (statement of Rep. Poff) (RICO 'not aimed at the isolated offender'); House Hearings, at 665. Significantly, in defining 'pattern' in a later provision of the same bill, Congress was more enlightening: '[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789 [95 S.Ct. 1284, 1295, 43 L.Ed.2d 616] (1975).

*Sedima*, 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14.

This new "pandora's box" led the Court of Appeals for the Eighth Circuit to conclude in *Superior Oil v. Fulmer*, 785 F.2d 252 (8th Cir.1986), that something more than a single scheme is required in order to establish a pattern of racketeering activity. In *Superior Oil*, the defendants had engaged in several acts of fraud relating to the theft of liquid petroleum from Superior Oil's pipeline. The Eighth Circuit found that such acts, amounting to what was deemed to be a single scheme, failed to rise to the level of a "pattern" of racketeering activity.

Reported "pattern" cases generally conform to one of four positions. The least restrictive view of "pattern" rejects *Sedima's* footnote 14 analysis as dictum and holds that two related racketeering acts, within ten years, satisfy the "pattern" requirement. *See United States v. Ianniello*, 808 F.2d 184 (2nd Cir.1986); *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985).[3] This position effectively ignores the clear intent of Congress to make the pattern element a meaningful requirement.

A second view of "pattern" focuses on the concept of "continuity plus relationship." *See Dierdorff, supra; Roeder v. Alpha Indus.*, 814 F.2d 22 (1st Cir.1987). Some courts adhering to this view look to various factors, such as the number and variety of predicate acts, the duration of criminal activity, the number of victims, the number of schemes and the nature of injuries inflicted. *See Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666 (3d Cir.1988); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir.1987). Although the predictability of results leaves something to be desired, this approach requires careful consideration of the facts of each case and often achieves appropriate results.

---

**3.** The Fifth Circuit has disputed the validity of its holding in *Hyatt,* but indicated that it was bound by precedent. *See Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423 (5th Cir.1987). The Second Circuit questioned the validity of *Ianniello* in a panel opinion, *see Beauford v.*

*Helmsley,* 843 F.2d 103 (2nd Cir.1988), *vacated on rehearing,* 865 F.2d 1386 (2nd Cir.1989), but essentially reaffirmed *Ianniello* on rehearing *en banc. See also United States v. Indelicato,* 865 F.2d 1370 (2nd Cir.1989).

A more conceptually complicated definition of "pattern" requires the application of the "multiple episode" test, requiring predicate crimes constituting a pattern to be related in some respect and to produce injury at separate times and places. *See Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 642 F.Supp. 781 (E.D. La.1986); *United States v. Freshie Co.*, 639 F.Supp. 442 (E.D.Pa.1986); *Soper v. Simmons Int'l, Ltd.*, 632 F.Supp. 244 (S.D. N.Y.1986).[4] This test, however, has the effect of overemphasizing "episodes" and discounting, somewhat the concept of "continuity."

The most difficult test to satisfy is the "multiple scheme" test to which the Eighth Circuit adheres and to which the Tenth Circuit seems to be moving. *See Pitts v. Turner & Boisseau, Chartered*, 850 F.2d 650 (10th Cir.1988).[5]

The decision in *Superior Oil* has been roundly criticized. *See Ianniello, supra; Bank of Waukegan, supra.* Nonetheless, the Eighth Circuit has steadfastly adhered to the *Superior Oil* roadblock. *Madden v. Gluck*, 815 F.2d 1163 (8th Cir.1987). In *Allright Missouri, Inc. v. Billeter*, 829 F.2d 631 (8th Cir.1987), the Eighth Circuit reiterated its two-scheme requirement. The fact that alleged acts occur over a number of years, or are directed against different individuals and diverse entities, does not satisfy the *Superior Oil* test. *See Ornest v. Delaware N. Cos.*, 818 F.2d 651 (8th Cir.1987); *Deviries v. Prudential Bache Sec., Inc.*, 805 F.2d 326 (8th Cir. 1986). Despite continued criticism, *see Sun Savings & Loan Assn. v. Dierdorff*, 825 F.2d 187 (9th Cir.1987), the Eighth Circuit continues to interpret the "more than two acts" requirement of *Sedima* as requiring "more than one scheme." *Billeter, Id.*

In *H.J. Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648 (8th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988), Senior Circuit Judge J. Smith Henley, writing for the court, stated that the Eighth Circuit's "slew" of cases singularly adhering to the multiple scheme requirement "grafted" onto the "pattern" element by *Superior Oil*, was a meaningful attempt to construe the concept of "pattern," despite the flat rejection of such a requirement by the Second, Seventh, and Ninth Circuits, numerous district courts, and respected scholars. In *H.J. Inc.*, the Eighth Circuit found that the plaintiff had satisfied the "relationship" prong which has its origins in the statements of Senator McClelland, 116 Cong.Rec. 18940 (1970) quoted in footnote 14 of *Sedima.* The "relationship" prong is met when two or more racketeering acts are shown to be in pursuit of the same scheme. *H.J. Inc.*, 829 F.2d at 650. However, a "continuity" prong, derived by the Eighth Circuit from S.Rep. No. 91–617, p. 158 (1969), also quoted in footnote 14 of *Sedima,* has proven to be an "onerous burden," as Judge Henley recognized. *See H.J. Inc.*, 829 F.2d at 650. The "definitional leap" upon which the Eighth Circuit relies requires that, in order to demonstrate the necessary continuity, a RICO plaintiff must allege that a RICO defendant "had engaged in similar endeavors in the past or that [it was] engaged in other criminal activities." *H.J. Inc.*, 829 F.2d at 650, quoting from *Deviries, Id.* at 329.

Judges John Gibson and McMillian, concurring, stated that the result reached by Judge Henley was compelled by the *Superior Oil* case but that the *Superior Oil* holding should be reconsidered *en banc* in view of the disrepute into which it had fallen. As indicated previously, the Supreme Court granted certiorari in *H.J. Inc.*, however, a decision has not yet issued from

---

**4.** Although the Seventh Circuit has not expressly repudiated the episode test, the recent cases from that jurisdiction seem to utilize the multiple factor approach. *See supra* note 3 and *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986).

**5.** Not every case, of course, fits precisely within one of the four categories. The Fourth Circuit has suggested that "pattern" requires allegations of ongoing unlawful activities whose scope and persistence "pose a special threat to social well-being," whatever that may be construed to mean. *See Int'l Data Bank v. Zepkin*, 812 F.2d 149 (2nd Cir.1987).

that court and *H.J. Inc.* remains the law of this circuit.

■ With this analytical framework in mind, the allegations of plaintiff's complaint must be examined in order to determine whether the plaintiff has alleged sufficient facts to satisfy the "continuity" prong of *H.J. Inc.*, i.e, whether plaintiff has alleged that the defendants have engaged in something more than a single scheme to defraud the plaintiff.

The complaint alleges that plaintiff and defendant, J. Askew, each own fifty percent of the stock in Perforaciones Altamar, a Venezuelan corporation incorporated in 1969 to conduct drilling and oil exploration activities in Venezuela. Plaintiff invested approximately three and one-half million dollars in the corporation. Plaintiff alleges that defendants represented that the corporation has not made any profit while, in fact, profits were realized and diverted by the defendants. Plaintiff sent accountants to Venezuela in 1987 and discovered that an audit was impossible because all records after 1975 were missing. The auditor was informed that the records were maintained in Fayetteville, Arkansas.

Plaintiff was finally allowed to review some records in September, 1988, and from that review concluded that the defendants misappropriated the funds of the corporation for their personal gain to defraud plaintiff of his investment and to use the ill-gotten gains to purchase or finance numerous family businesses.

Plaintiff contends that more than one "scheme" is involved. One "scheme" was allegedly devised in 1985 whereby American dollars generated by drilling contracts were deposited in accounts under the control of defendant, J. Askew. Another alleged "scheme" began "in or about the 1980's" to fund personal family trusts belonging to the defendants and to fund the pension trust for the Evelyn Hills Shopping Center belonging to J. Askew. As part of their "schemes," defendants allegedly used profits of the corporation to fund Askew Enterprises, Inc., defendants' corporation. Via Askew Enterprises, defendants began a race horse business. Another separate "scheme" allegedly began in December, 1986, whereby defendants attempted to coerce plaintiff into assigning his interest in the corporation to J. Askew and misrepresented the actual value of the business. Plaintiff also alleges that defendants dissipated the remaining assets of the corporation and used the remaining funds for personal expenses.

Numerous acts of mail and wire fraud by defendants are set forth in other paragraphs. Quite clearly plaintiff has alleged two or more racketeering acts in furtherance of a scheme and has satisfied the "relationship" prong of *Superior Oil.* Plaintiff, obviously aware of the *Superior Oil* holding, further alleges that defendants have engaged in similar schemes to defraud other business partners of J. Askew, including a scheme in 1986 whereby defendants acted to defraud Gene Hudson of his ownership interest in Evelyn Hills Shopping Center, and at some unspecified date attempted to deprive John McGuire of his interest in several shopping centers.

Given the stringent interpretation of the multiple-scheme requirement "grafted" onto the RICO statutes, the court concludes that the complaint sets forth but one scheme to defraud the plaintiff and the corporation, although in diverse and creative manners at various times and places. *See Madden, supra; Ornest, supra; Deviries, supra.* Therefore, insofar as plaintiff and the corporation were victimized by the defendants acting in concert, a RICO claim has not been pled. However, plaintiff additionally avers that Gene Hudson was defrauded of his interest in Evelyn Hills and that John McGuire was similarly victimized. Assuming that these allegations can be particularized with sufficient specificity, *see* Rule 9(b) Fed.R.Civ.P., plaintiff will have alleged that defendants "engaged in similar endeavors in the past or [were] engaged in other criminal activities." *H.J. Inc.*, 829 F.2d at 650. Therefore, plaintiff's complaint is not subject, at this point to dismissal on the basis of the "continuity" prong of governing Eighth Circuit RICO holdings.

■ Notwithstanding that it is possible for plaintiff to replead the RICO allegations to satisfy the "continuity" prong, plaintiff's allegations are woefully deficient under Rule 9(b). Rule 9(b), which requires that fraud be pleaded with particularity, applies to the pleading of RICO predicate acts. *See Flowers v. Continental Grain Co.*, 775 F.2d 1051 (8th Cir.1985). Plaintiff has pled that wire fraud and mail fraud were committed in furtherance of the scheme of which he was a victim on numerous occasions between 1969 and 1988. Such conclusory allegations have repeatedly been held to be insufficient in RICO cases. *See Van Dorn v. Howington*, 623 F.Supp. 1548 (N.D.Ohio 1985); *Bieganek v. Wilson*, 642 F.Supp. 768 (N.D.Ill.1986). This is more so true where it is the plaintiff who is the recipient of the mail or wire communications.

Plaintiff is directed to amend the complaint setting forth the dates, content, and the "actors" involved in sufficient acts of mail or wire fraud to satisfy the RICO statutes within 30 days of the filing of this opinion or the RICO claims will be subject to dismissal. Further, the amended complaint should set forth the role such communication played in the overall schemes. This requirement applies to the scheme to defraud Wilson and the corporation, and the schemes to defraud Hudson and McGuire.

■ Many courts require that a RICO plaintiff aver that *each* defendant has committed two or more predicate acts. *See Beck v. Cantor, Fitzgerald and Co., Inc.*, 621 F.Supp. 1547 (N.D.Ill.1985). However, the soundness of such a rule is open to question where a conspiracy is alleged which would render one defendant responsible for the wrongful predicate acts of another defendant. In order to avoid this rule, plaintiff should plead the existence of a conspiracy, the members of the conspiracy, the role of each defendant in the conspiracy, and how the predicate acts furthered the conspiracy. Otherwise the plaintiff must plead that each defendant committed two predicate acts, again with the particularity described above.

Additionally, as plaintiff apparently relies upon wire fraud and mail fraud as the underlying predicate acts, the plaintiff should state how each mail and wire communication involved violates 18 U.S.C. §§ 1341 and 1343.

The court is aware of the burden placed upon a litigant by the particularity requirement imposed by Rule 9(b), especially in a RICO action governed by the Eighth Circuit's *Superior Oil* decision. The limitation of relief under RICO caused by the interplay of these rules of law undoubtedly precludes a RICO recovery where it may otherwise be available. Nonetheless, the court does not mean to suggest that the limitation imposed by these rules is undesirable. Indeed it was commonly believed for years that RICO was aimed at "mobsters" and kingpins of crime rather than legitimate businesses. To the extent that the *Superior Oil* decision restricts RICO relief to cases involving "corrupt organizations," it may well be that the Supreme Court will find *Superior Oil* and *H.J. Inc.* to be a more meaningful construction of the concept of "pattern" as suggested by Judge Henley in *H.J., Inc.* In any event, it is not the role of this court to second guess the Eighth Circuit, particularly where courts and scholars have been unable to agree on the most fundamental questions presented by RICO.

### FRAUD

■ Defendants contend that plaintiff has similarly failed to plead his common-law fraud claims with the particularity required by Rule 9(b). As a general rule, Rule 9(b) requires specification of the time, place, content and persons involved in fraudulent communications. *See Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982). This is particularly true where the allegations of a complaint are insufficient to allow a defendant to evaluate possible defenses such as statute of limitations, laches, estoppel, unclean hands, *pari delicto* or illegality.

With regard to the fraud claims, plaintiff alleges that J. Askew and M. Flynn continuously represented in numerous conversations to plaintiff from 1969 to the present

the profitability of the corporation and the purposes of expenditures of plaintiff's investment. Defendants allegedly conspired with unknown others to accomplish their unlawful purpose.

These allegations are not sufficient under Rule 9(b). Plaintiff will need to set forth some times, places, content, means of communication, and persons involved in the fraudulent communications. As it appears these communications, or some of them, were with the plaintiff personally, there is no reason why the plaintiff cannot set forth sufficient facts to satisfy Rule 9(b).

## DERIVATIVE ACTION

Defendants contend that plaintiff lacks standing to sue because the true injuries are to Perforaciones Alta Mar and plaintiff's claim is derivative. This would be the case if plaintiff sought only to assert his rights as a shareholder. However, plaintiff quite clearly asserts injury to himself separate and apart from his status as a shareholder, and as so limited there is no problem occasioned by the failure to join the corporation as a party. Specifically, plaintiff alleges investing three and one-half million dollars into the corporation of which he was a shareholder. The loss of the initial investment, as opposed to the right to share in the profits, is an individual injury, not a corporate one. *See Morgan v. Robertson*, 271 Ark. 461, 609 S.W.2d 662 (App.1980). Further, Rule 23.1, Fed.R. Civ.P. was designed to allow the precise type of action by a shareholder of which defendants complain, although plaintiff has not satisfied its terms. In any event, since plaintiff alleges an individual injury, the derivative nature of the corporate injury is no bar. Should plaintiff seek to introduce evidence as to damages sustained by him as a shareholder, Rule 23.1 would be implicated and plaintiff will have to comply with the requirements of that rule.

## CONCLUSION

Plaintiff will be granted a period of 30 days in which to cure the defects contained in the complaint as detailed above or face dismissal of the claims to which the defec-

tive allegations pertain. A separate order effectuating the terms of this memorandum opinion will be concurrently entered.