**GREEK RADIO NETWORK OF AMERICA, INC.**

v.

**Gregory VLASOPOULOS and Joyce Vlasopoulos.**

**Civ. A. No. 88–9711.**

United States District Court, E.D. Pennsylvania.

Feb. 28, 1990.

---

**19.** After that, Rannels will have to file a new complaint with a new docket number and filing fee.

Michael J. Malloy, Media, Pa., for plaintiff.

Matthew J. Siembieda, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

### I. *Introduction.*

Plaintiff, the Greek Radio Network of America ("GRNA"), is a Pennsylvania corporation whose principal business consists of providing Greek and other ethnic programming to radio subscribers in the Philadelphia metropolitan area and in other areas throughout the United States. GRNA owns and operates radio stations in Media and Reading, Pennsylvania, and in Atlantic City, New Jersey. From these stations, GRNA transmits its programming on separate subcarrier frequencies which cannot be received by the general public. The broadcasts can be received only through the use of special, modified radio equipment which GRNA provides to its subscribers for a yearly fee. GRNA's Complaint alleges that the defendants, Joyce and Gregory Vlasopoulos were and are "engaged almost entirely in the business of illegally modifying radio units, for a fee, in order to allow unauthorized listeners to obtain and enjoy the programming on Plaintiff's subcarrier frequency." Complaint ¶ 5. GRNA contends that these alleged activities are in violation of federal law. In Count One of the Complaint, GRNA claims that defendants' actions violate § 705 of the Communications Act of 1934, as amended, 47 U.S.C. § 605. In Count Two, GRNA claims that defendants' actions violate sections 2511 and 2520 of the Federal Wiretapping statute, as amended, 18 U.S.C. §§ 2511, 2520. In Count Three, GRNA contends that the defendants' activities violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

Defendants have moved to dismiss GRNA's claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that they fail to state a claim upon which relief can be granted. In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I accept the well-pleaded factual allegations of the Complaint as true. The Complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that GRNA can prove no set of facts in support of its allegations which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Marshall–Silver Con-*

*struction Co., et al. v. Mendel, et al.,* 894 F.2d 593, 595 (3d Cir.1990); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988); *Labov v. Lalley,* 809 F.2d 220, 221–22 (3d Cir.1987); *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985).

## II. *The Section 605 Claim.*

■ In Count I of the Complaint, GRNA alleges that defendants' actions violate Section 605 of the Communications Act.[1] That Section prohibits the interception or use of interstate radio communications by those not entitled to their benefits. 47 U.S.C. § 605(a). Section 605(a) also contains a proviso (the "§ 605(a) proviso"), which states: "This section shall not apply to the receiving, divulging, publishing or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public...." *Id.*[2]

■ Defendants argue that GRNA's radio transmissions constitute "radio communication ... transmitted ... for the use of the general public" under the § 605(a) proviso, and therefore are exempt from the coverage of § 605(a).[3] Defendants' reliance on *Functional Music, supra,* n. 3, in support of this position is misplaced.

In *Functional Music* the plaintiff challenged the Federal Communication Commission's regulation of "functional radio programming" in which regular radio stations would broadcast music programming that included a supersonic tone emitted just before each commercial advertisement. Paying subscribers would receive only the music, having deleted the commercials by means of special equipment furnished to the subscribers by the service. The F.C.C. objected to the broadcasting on the grounds that radio broadcasters could not transmit both regular broadcasts and those for the use of limited audiences.

In reversing the F.C.C.'s decision, the Court held that the F.C.C. could not properly regulate the transmissions, and stated that:

> [b]roadcasting remains broadcasting even though a segment of those capable of receiving the broadcast signal are equipped to delete a portion of that signal.... [F]unctional programming can be, and is, of interest the *general* radio audience.... In this light, a finding that the programming of petitioner and broadcasters comparably situated is not directed to, and intended to be received by, the public generally is clearly errone-

1. An aggrieved party has a private cause of action under 47 U.S.C. § 605(a) for injuries arising from a violation of that section. *See, e.g., Movie Systems, Inc. v. Heller,* 710 F.2d 492, 494 n. 4 (8th Cir.1983); *National Subscription Television v. S & H TV,* 644 F.2d 820, 821, n. 1 (9th Cir.1981); *Chartwell Communications Group v. Westbrook,* 637 F.2d 459, 466 & n. 5 (6th Cir. 1980); *American Television & Communications v. Floken, LTD,* 629 F.Supp. 1462, 1467 (M.D.Fla. 1986); *Hoosier Home Theater, Inc. v. Adkins,* 595 F.Supp. 389, 395 (S.D.Ind.1984); *Ciminelli v. Cablevision,* 583 F.Supp. 158, 160–61 (E.D.N. Y.1984); *Cox Cable Cleveland Area, Inc. v. King,* 582 F.Supp. 376, 380 (N.D.Ohio 1893).

2. Congress amended the Telecommunications Act in 1984 and redesignated Section 605 as Section 705. *See* Comprehensive Cable Telecommunications Act of 1984, Public Law No. 98–549, § 5(a), 98 Stat. 2802, 2804. Nevertheless, Section 705 remains codified at 47 U.S.C. § 605.

3. Defendants' position on the proper interpretation of the § 605(a) proviso is unclear. Defendants' brief initially argues that the proper test to apply is that established in *Functional Music v. F.C.C.,* 274 F.2d 543, 548 (D.C.Cir.) *cert. de-*

*nied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1958) (transmission within § 605(a) proviso if it "can be, and is, of interest to the general radio audience"). Defendants' Memorandum in Support of Motion to Dismiss, at 21. Defendants then state, without identifying the analyses to which they are referring: "Under either analysis, the plain language of the Communications Act indicates that the 'intent' of the transmittor is central to determining the issue of whether the broadcasts are protected by Section 605 of the Communications Act." *Id.*

If defendants' position is that the determinative factor in deciding whether a transmission falls within the § 605 proviso is whether the transmission was intended for the use of the general public, GRNA and defendants are in agreement. *See* Plaintiff's memorandum in opposition to defendants' motion to dismiss, at 2. For the purposes of this Memorandum, I construe defendants' position as contending that the *Functional Music* test is the proper interpretation of § 605(a) and that, in the alternative, GRNA intends the general public to receive its transmissions, so that the transmissions fall within the § 605(a) proviso.

ous. Transmitted with the intent contemplated by § [15]3(*o*), such programming therefore has the requisite attributes of broadcasting.

*Id.* at 548 (emphasis in original) (footnote omitted).

Defendants claim that *"Functional Music* held that radio broadcasts such as the GRNA's are broadcasts for use of the general public, and, thus, not protected by Section 605(a) of the Communications Act." Defendants' reply memorandum, at 12. This assertion is incorrect. The type of radio transmission involved in *Functional Music* is fundamentally different from that involved in this case. In the case of functional radio programming, members of the general public, by use of unaltered radio equipment, are able to receive the very same signals as do subscribers to the service; the service merely deletes certain portions of those broadcasts. This case, however, involves "pure" subscription radio services in which the transmissions are receivable only by subscribers using special equipment. *Functional Music,* therefore, is distinguishable and its construction of § 605(a) is inapposite. *See Chartwell Communications Group,* 637 F.2d at 463–64; *U.S. v. Westbrook,* 502 F.Supp. 588, 591 (E.D.Mich.1980); *Home Box Office, Inc. v. Pay TV of Greater New York, Inc.,* 467 F.Supp. 525, 528 (E.D.N.Y.1979). The Court of Appeals for the District of Columbia Circuit has distinguished the holding of *Functional Music* from cases involving "pure" subscription radio services on precisely this ground. *National Association for Better Broadcasting v. F.C.C.,* 849 F.2d 665, 667 (D.C.Cir.1988).

**4.** In *Orth–O–Vision, Inc. v. Home Box Office,* 474 F.Supp. 672, (S.D.N.Y.1979), the Court held that the mass appeal of the program content of a subscription television service placed its transmissions within the § 605(a) proviso, and therefore outside the protection of that Section. Every Court that has addressed this holding has rejected it on the grounds that intent to transmit to the general public rather than mass appeal determines whether a transmission falls within the § 605(a) proviso. *See ON/TV,* 763 F.2d at 843; *Movie Systems,* 710 F.2d at 495; *National Subscription Television,* 644 F.2d at 824; *Chartwell Communications Group;* 637 F.2d at 465–66 and note 4; *Westbrook,* 502 F.Supp. at 591.

The substantial weight of authority construing the § 605(a) proviso holds that the crucial factor in determining whether programming is broadcast for the use of the general public "is not whether the content of the programming has mass appeal or mass availability but rather, whether it was *intended for the use of the general public." Movie Systems,* 710 F.2d at 494 (emphasis in original). *Accord ON/TV of Chicago v. Julien,* 763 F.2d 839, 842 (7th Cir. 1985); *National Subscription Television v. S & H TV,* 644 F.2d 820, 823–25 (9th Cir.1981); *Chartwell Communications Group,* 637 F.2d at 465; *Floken,* 629 F.Supp. at 1468; *American Television & Communications v. Western Techtronics, Inc.,* 529 F.Supp. 617, 620 (D.Colo.1982).[4]

The Complaint alleges that GRNA's programming "is not intended for the general public but is intended solely for paying subscribers; the ... program cannot be heard by the public in that the only receivers capable of receiving said subcarrier frequency are those leased by Plaintiff...." Complaint ¶ 8. By alleging that GRNA's programming is not intended for use by the general public, the Complaint adequately alleges that GRNA's transmissions do not fall within the § 605(a) proviso. *See, e.g., KMLA Broadcasting Corp. v. Twentieth Century Cigarette Vendors Corp.,* 264 F.Supp. 35, 42 (C.D.Cal.1967); *FM Table of Assignments,* 61 F.C.C.2d 113, 117–18 (1976); *Greater Washington Educ. Telecommunications Ass'n, Inc.,* 49 F.C.C.2d 948 (1974); *WFTL Broadcasting Co.,* 45 F.C.C.2d 1152 (1974).[5]

*See also National Association for Broadcasting, supra.*

**5.** Defendants point out in their reply memorandum that the series of cases GRNA cites in support of the position that its transmissions are not intended for the use of the general public all deal with cable and satellite television broadcasting. Defendants' argue that "[g]iven the distinctions between television broadcasting and radio broadcasting, the persuasive value of these cases is questionable at best." Defendants' reply memorandum, at 12.

I reject this argument. The cases dealing with the § 605(a) proviso's application to television transmissions involve unauthorized interception

■ Defendants also contend that GRNA has not alleged the requisite elements of a cause of action under § 605(a). To be held liable under § 605(a), a defendant must be shown to have (1) intercepted or aided the interception and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff. *California Satellite Systems*, 767 F.2d at 1366 (9th Cir.1985); *National Subscription Television*, 644 F.2d at 826; *Telerate Systems, Inc. v. Caro*, 689 F.Supp. 221, 230 (S.D.N.Y.1988). *See also United States v. Butenko*, 494 F.2d 593, 599–600 (3d Cir.) (en banc), *cert. denied* 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974). Contrary to defendants' contention, I find that GRNA has pled these elements.

First, the Complaint alleges that defendants "are engaged almost entirely in the business of illegally modifying radio units, for a fee, so as to allow unauthorized listeners to obtain and enjoy the programming on Plaintiff's subcarrier frequency." Complaint ¶ 5. These activities clearly "are assisting third parties in receiving communications to which they are not entitled." *National Subscription Television*, 644 F.2d at 826. *See also Chartwell Communications*, 637 F.2d at 466. GRNA has properly alleged that defendants aided the interception of its transmissions.

Second, the act of viewing a transmission that the viewer was not authorized to receive constitutes a divulgement or publication. *California Satellite Systems*, 767 F.2d at 1366; *National Subscription Television*, 644 F.2d at 826; *Telerate Systems*, 689 F.Supp. at 221; *Ciminelli v. Cablevision*, 583 F.Supp. 158, 164 (E.D.N.Y.1984);

*Cox Cable*, 582 F.Supp. at 380. This rule applies to radio transmissions. *California Satellite Systems*, 767 F.2d at 1366. Therefore, I find that GRNA has properly alleged publication or divulgement.

I conclude that GRNA's transmissions are not intended "for the use of the general public" within the § 605(a) proviso, and that GRNA has stated a claim for violation of that Section. Defendants' motion to dismiss Count I of the Complaint will be denied.

### III. *The Section 2511 claim.*

In Count II of the Complaint, GRNA alleges that defendants' actions violate Sections 2511 and 2520 of the Communications Act of 1934, as amended, 18 U.S.C. §§ 2511, 2520.[6] Section 2511 provides, in pertinent part:

(1) Except as otherwise specifically provides by this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communications;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical or other device to intercept any oral communication when—

\* \* \* \* \* \*

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail

---

of transmissions not available to the non-subscriber general public and are directly analogous to this case. *See, e.g., Chartwell Communications*, 637 F.2d at 465. These cases include subscription sales of "decoder kits" capable of unscrambling television transmissions, *ON/TV, supra; National Subscription Television, supra; Chartwell Communications, supra;* and unauthorized interception of microwave or cable television transmissions, *California Satellite Systems, v. Seimon*, 767 F.2d 1364 (9th Cir.1985); *Movie Systems, supra; Floken, supra. See, generally, Entertainment & Sports Programming Network v. Edinburg Community Hotel*, 623 F.Supp. 647, 652 (D.C.Tex.1985). Because these cases address the same type of activity at issue

in this case, the unauthorized interception of transmissions not available to the non-subscriber general public, and construe the same statute at issue in this case, I find that they are persuasive authority.

6. GRNA's Complaint alleges only that plaintiffs violated § 2511 and § 2520. In its Memorandum in response to defendants' motion to dismiss, GRNA states that it is alleging violations under 18 U.S.C. § 2520 of 18 U.S.C. §§ 2511(1)(a), 2511(1)(b)(ii) and 2511(1)(b)(iii). Plaintiff's Memorandum in response to defendants' motion to dismiss, at 4–5.

or transported in interstate or foreign commerce . . .

[shall be guilty of an offense against the laws of the United States.]

18 U.S.C. §§ 2511(1)(a), 2511(1)(b)(ii), 2511(1)(b)(iii), 2511(4)(a). Section 2520 provides, in pertinent part, ". . . any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate." *Id.* § 2520(a).

Defendants have moved to dismiss Count II of the Complaint on two grounds. First, defendants assert that Congress did not intend the Communications Act to apply to the type of transmission involved in this case. Second, defendants argue that the Act only prohibits the *act* of intercepting a radio transmission, and that the prohibition does not apply to their activities in this case. I conclude that both of these arguments are valid and are supported by persuasive authority.

■ Defendants argue that Congress did not intend the Communications Act to apply to the type of activity alleged in this case. I agree. In *Cox Cable*, the Court, after closely examining legislative history of the Communications Act, held that Congress did not intend § 2511 to confer upon an operator of a cable television system a cause of action against an alleged seller of "converter/decoders" which allowed unauthorized reception of the operator's private signals. *Cox Cable*, 582 F.Supp. at 382. The Court concluded that all of the cases construing § 2511

. . . were concerned with the "bugging" or "wiretapping" of telephones, and telephone conversation, use of pen registers, and other types of electronic *surveil-*

*lance.* The activity common to these cases was a defendant's efforts to surreptitiously learn the contents of private, business, or personal communications made over the telephone; not the unlawful interception of cable television programming.

*Id.* (emphasis in original).

I will follow *Cox Cable.*[7] GRNA's radio transmissions, while not intended for the use of the general public, *see, supra,* at 1231, are not the type of transmissions protected under § 2511. GRNA does not contend that defendants engaged in "efforts to surreptitiously learn the contents of private, business or personal communications made over the telephone." Instead, GRNA seeks to expand the scope of § 2511 in a fashion which the *Cox Cable* Court expressly rejected. I conclude that § 2511 and § 2520 do not apply to the type of transmission involved in this case. These sections do not provide GRNA with a cause of action for the interception of its radio transmissions.

■ I also accept defendants' argument that in enacting § 2511, Congress "intended to prohibit the *act* of intercepting an electronic radio communication." Defendants' memorandum in support of motion to dismiss, at 16 (emphasis in original). Defendants assert that because the Complaint does not allege that defendants engaged in the act of intercepting GRNA's radio transmissions, the Complaint does not state a claim under § 2511. In response, GRNA contends that defendants have "procured others" under § 2511 to intercept its transmissions.[8] Plaintiff's memorandum in opposition to motion to dismiss, at 4–5.

I decline to accept GRNA's construction of the statute.[9] Defendants' acts cannot be said to constitute "procuring" another person or persons to violate the statute. In

---

7. As I noted with respect to GRNA's claim in Count I under 47 U.S.C. § 605(a), GRNA's radio transmissions are directly analogous to private cable television transmissions. *See, supra,* note 5. Therefore, I find the *Cox Cable* construction of § 2511 persuasive in this case.

8. GRNA does not claim that defendants intercepted, disclosed or used a wire or oral commu-

nication under § 2511. *See* Plaintiff's memorandum in opposition to motion to dismiss, at 4–5.

9. GRNA has provided no authority for its construction of §§ 2511 and 2520. *See* Plaintiff's memorandum in opposition to motion to dismiss, at 4–5.

*Flowers v. Tandy,* 773 F.2d 585 (4th Cir. 1985), the Court addressed this issue. In *Flowers,* a husband whose wife was seeking a divorce purchased a telephone recording device which he subsequently used to intercept and record his wife's telephone conversations. After discovering that her calls were being recorded, the wife brought an action under § 2511 and § 2520 against the manufacturer of the device.

The *Flowers* Court held that the § 2511 "procure" language did not extend the scope of the Section to reach the conduct of the manufacturer.[10] The Court stated that " '[p]rocure' is generally understood to mean actively bringing about, causing or instigating something to be done." *Id.* at 590, *citing Black's Law Dictionary* 1087 (5th Ed.1979). The *Flowers* Court noted that all of the cases which have interpreted the "procuring" language of § 2511 hold that it "was intended to reach the principal who enlists the aid of an agent to do the actual interception." *Id., citing Jacobson v. Rose,* 592 F.2d 515 (9th Cir.1978); *United States v. Jones,* 542 F.2d 661 (6th Cir. 1976); *Kratz v. Kratz,* 477 F.Supp. 463 (E.D.Pa.1979). The Court concluded, "[w]e do not believe the mere selling of a recording control device rises to the level of active participation that is contemplated by Congress' use of the term 'procures.' " *Flowers,* 773 F.2d at 590. I will follow *Flowers,* and conclude that GRNA's allegations concerning defendants' sale of modified radio receivers do not constitute "procuring others" under § 2511.

For the foregoing reasons, I hold that plaintiff has failed to state a claim under § 2511 and § 2520.[11] Count II will be dismissed.

**IV.** *The RICO Claims.*

In Count III of the Complaint, GRNA claims that defendants have violated 18 U.S.C. § 1962(c) and § 1962(d). Plaintiff's RICO Case Statement, at 1.[12] Section 1962(c) provides "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Section 1962(d) provides "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections [sic] (a), (b), or (c) of this section."

In order to state a claim under Section 1962(c), GRNA must allege adequately that defendants engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(c) (1982). Section 1961(1) defines "racketeering activity" as, inter alia, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotics or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year...." *Id.* § 1961(1). Section 1961(1) also includes as racketeering activity specific federal crimes including mail fraud, *id.,* at § 1341 (1982), wire fraud, *id.* § 1343, and interstate transportation and sale of stolen and fraudulently obtained goods, *id.* §§ 2314–2315 (1982). A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity within a ten year period. *Id.* § 1961(5). *See Seville Industrial Machinery Corp. v. Southmost Machine Corp.,* 742 F.2d 786,

---

**10.** The *Flowers* Court held without discussion that the manufacturer did not intercept, disclose or use a wire or oral communication in violation of § 2511. *Flowers,* 773 F.2d at 590.

**11.** Defendants' Memorandum in support of the motion to dismiss includes a lengthy discussion of GRNA's failure to state a claim under 18 U.S.C. § 2512. Defendants' memorandum in support of motion to dismiss, at 17–19. Because neither GRNA's Complaint nor its Memorandum in opposition to defendants' motion to dismiss claims that defendants have violated

§ 2512, I will not address defendants' discussion of that section.

**12.** On March 30, 1989, I ordered GRNA to file a RICO Case Statement setting forth in detail the allegations underlying its RICO claim. GRNA complied with this Order on April 13, 1989. I will consider GRNA's RICO Case Statement to be a pleading in this action. For the purpose of this memorandum, I will refer to the allegations of the Complaint and GRNA's RICO Case Statement collectively as "the Complaint."

788–89 (3d Cir.1984), *cert. denied* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

■■■■ Defendants have moved to dismiss GRNA's § 1962(c) claim on the ground that GRNA has failed to allege any of the statutorily defined types of racketeering activity. GRNA does not contend that either the alleged violations of the Communications Act or the alleged violations of the Wiretapping Act are predicate acts under § 1961(1). Instead, GRNA argues that defendants have committed the state law crime of robbery, a predicate act under § 1961(1).

GRNA contends that under Pennsylvania law, a "robbery" includes a situation in which a person, in the course of committing a theft, "commits ... any felony of the First or Second degree." 18 Pa.C.S.A. § 3701(a)(1)(iii) (Purdon 1982). GRNA argues that when the defendants began to illegally modify radio sets for a fee, they committed a theft. Further, GRNA contends that in committing this theft, defendants violated the Pennsylvania Corrupt Organization Statute which prohibits persons employed by or associated with any enterprise from participating, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. *Id.,* at § 911(b)(3). Violation of this statute is a felony of the first degree. *Id.,* at § 911(c). GRNA concludes that defendants have committed both theft and a felony of the first degree, and therefore have committed robbery. *See* Plaintiff's Response to Defendants' Motion to Dismiss, at 11–13.

I decline to accept GRNA's reading of § 3701(a)(1)(iii). Under Pennsylvania law, the use of or threat of force, however slight, is an essential element of the crime of robbery. *See Commonwealth v. Williams,* 379 Pa.Super. 538, 550 A.2d 579, 581 (1988); *Commonwealth v. Windell,*

365 Pa.Super. 392, 529 A.2d 1115 (1987); *Commonwealth v. Smith,* 333 Pa.Super. 155, 481 A.2d 1352, 1353 (1984). The requirement of the use of or threat of force is the element which distinguishes robbery from common law theft or larceny. *Commonwealth v. Brown,* 506 Pa. 169, 484 A.2d 738, 742 (1984); *Williams,* 550 A.2d at 581. The Official Comment to Section 3701 makes this distinction clear:

> ... the requirement of "serious bodily injury" has replaced the existing requirement of "violence." The offense of robbery is extended to include threats, since they are indicative of the actor's willingness to carry them out and are regarded as the equivalent of injuries. *Unless there is such injury, the unlawful taking from the person would be theft, not robbery.*

18 Pa.C.S.A. § 3701 Official Comment—1972 (emphasis supplied).

GRNA's argument that § 3701(a)(1)(iii) does not require the use of or threat of force as an element of the crime of robbery fails to acknowledge the distinction between robbery and theft. GRNA provides no support for its contention that the use or threat of force is not an element of the crime of robbery. In contrast, the Pennsylvania Courts have consistently held that the crime of robbery must include an element of force. *See Williams,* 550 A.2d at 582 (defendant could not be convicted of robbery when victim was unconscious and unaware of use of force).

Because GRNA's Complaint does not allege that defendants used force or the threat of force, defendants cannot have committed robbery under § 3701. GRNA's Complaint does not allege that defendants committed any other predicate offense under § 1961(1). Because GRNA has not pled a predicate offense under § 1961(1), its § 1962(c) claim must be dismissed.[13]

**13.** Because I conclude that GRNA has not pled a "racketeering activity" under § 1961(1), I express no opinion on whether GRNA has adequately alleged a "pattern of racketeering activity" under § 1962(c). *See Marshall–Silver Construction Co. et al. v. Mendel, et al.,* 894 F.2d 593 (3d Cir.1990); *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162 (3d Cir.1989); *Swistock v.* *Jones,* 884 F.2d 755 (3d Cir.1989). Nor do I express an opinion on whether the Complaint adequately alleges the existence of a separate and distinct "person" and "enterprise" as required under § 1962(c). *See Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349 (3d Cir.1987); *B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628 (3d Cir.1984).

GRNA's Complaint also fails to state a claim under § 1962(d).[14] That section provides that it is unlawful for any person to conspire to violate subsections (a), (b) or (c) of § 1962. In *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir.1989), the Court stated:

> To plead conspiracy adequately [under § 1961(d) ], a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. *Additional elements include agreement to commit predicate acts and knowledge that the acts were a pattern of racketeering.*

*Id.* at 1166–67 (citations omitted) (emphasis supplied), *citing Odesser v. Continental Bank*, 676 F.Supp. 1305, 1312–13 (E.D.Pa. 1987). GRNA has failed to meet this standard and has therefore failed to state a claim under § 1962(d).

First, the Complaint does not allege that defendants agreed to commit predicate acts. Furthermore, I have concluded that the Complaint does not state a claim under § 1962(c).[15] *See* discussion, *supra*, at 1234–35. Because the Complaint does not state a cognizable § 1962(c) claim, GRNA cannot allege that defendants agreed to commit predicate acts in violation of § 1962(d). *See Gilbert v. Prudential–Bache Securities*, 643 F.Supp. 107, 110 (E.D.Pa.1986); *Rich Maid Kitchens v. Pa. Lumbermans Mut. Ins. Co.*, 641 F.Supp. 297, 311 (E.D.Pa.1986) *aff'd* 833 F.2d 307 (3d Cir.1987). Second, the Complaint does not allege that the defendants had knowledge that their acts, if illegal, were part of a pattern of racketeering activity. *See, e.g., Odesser*, 676 F.Supp. at 1313.

I conclude that because GRNA has failed to plead the existence of an agreement between the defendants to commit a predicate offense, GRNA has failed to state a claim under § 1962(d).

## V. *Conclusion.*

For the foregoing reasons, defendants' motion to dismiss Count I will be denied. Defendants' motion to dismiss Counts II and III will be granted.

---

**14.** GRNA's Complaint does not cite § 1962(d) and does not allege the existence of a RICO conspiracy. *See* Complaint, ¶¶ 31–39. GRNA's RICO Case Statement alleges as follows in response to question 11:

> 11. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe the alleged conspiracy.
> The complaint alleges that the defendants are husband and wife, and that they have implicitly agreed to engage in the business enterprise of soliciting persons to purchase, for a fee, equipment which will allow the subscribers to illegally intercept plaintiff's radio signal and enjoy plaintiff's Greek Culture program. Both defendants are knowingly engaged in a cooperative effort to derive financial gain from this cooperative effort.

RICO Case Statement, at 9. Viewing this statement in the light most favorable to GRNA, I find that GRNA has plead the existence of an agreement to act, but not an agreement to commit predicate acts, an essential element of a § 1962(d) claim. *See Odesser*, 676 F.Supp. at 1312.

**15.** The Complaint does address the period of the conspiracy, the object of the conspiracy and the actions of the defendants allegedly taken to achieve that purpose. *See* Complaint ¶¶ 10–13.