**OCEANIC CABLEVISION, INC., a Hawaii corporation, Plaintiff,**

v.

**M.D. ELECTRONICS and Joseph Abboud, Defendants.**

Civ. No. 89–0–802.

United States District Court, D. Nebraska.

Feb. 8, 1991.

Soren S. Jensen, J. Russell Derr, Erickson & Sederstrom, Omaha, Neb., and Kevin S.C. Chang, Honolulu, Hawaii, for plaintiff.

Michael G. Connery, Tory M. Bishop, Kutak Rock & Campbell, Omaha, Neb., for defendants.

## MEMORANDUM OPINION

STROM, Chief Judge.

This matter is before the Court on defendants M.D. Electronics (hereinafter M.D.) and Joseph Abboud's motion to dismiss plaintiff's cause of action for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) (Filing No. 11). Defendants also move the Court for an order dismissing plaintiff's first and second claims for relief for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b), or, in the alternative, pursuant to Fed.R.Civ.P. 12(e), requiring more definite and certain allegations pertaining to the predicate acts allegedly constituting violations of 18 U.S.C. §§ 1961 and 1964.

Jurisdiction is premised on 28 U.S.C. §§ 1331, 1332, 1337(a), 1338, and 18 U.S.C. §§ 1964(a) and 1964(c).

Plaintiff's amended complaint alleges the following facts. Oceanic Cablevision, Inc. (hereinafter Oceanic) is in the business of supplying cable television programming to subscribers in the Honolulu, Hawaii, area. Oceanic maintains that it has invested considerable sums in setting up and maintaining the system which receives cable programming from suppliers and transmits the programs to individual subscribers.

Oceanic's customers may purchase differing levels of service; however, the customer's access to the different levels of service available is controlled by the programming of the converter box used by the customer. Certain premium channels, such as HBO, are transmitted in a scrambled form, which is descrambled only by the equipment used by those customers who pay for the premium stations.

Oceanic has asserted a property interest in the signals it transmits to its subscribers. Defendants allegedly sold equipment which may be used in place of the equipment Oceanic provides to its customers for a monthly fee. According to Oceanic, the equipment sold by the defendants is capable of decoding or unscrambling the signals transmitted by Oceanic on its premium channels without Oceanic's knowledge or consent.

The alleged sale of the aforementioned equipment by defendants forms the basis of thirteen (13) claims for relief asserted by Oceanic:

1) Civil violation of 18 U.S.C. § 1962(c);

2) Violation of 18 U.S.C. § 1962(d) (conspiracy to violate § 1962(c));

3) Violation of 47 U.S.C. § 553(a)(1);

4) Violation of 47 U.S.C. § 605(a);

5) Violation of 18 U.S.C. § 2511(1)(a);

6) Violation of 18 U.S.C. § 2512(1);

7) Tortious interference with the contractual relationship between Oceanic and its subscribers;

8) Tortious interference with the contractual relationship between Oceanic and each of its program suppliers;

9) Tortious interference with prospective advantage;

10) Tortious interference with lawful business;

11) Unfair competition;

12) Aider and abetter liability for violation of Hawaii Rev.Stat. § 708–8200; and

13) Violation of Hawaii Rev.Stat. § 708–8200.

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), allegations in the complaint must be viewed in the light most favorable to plaintiff. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). Thus, a dismissal under Rule 12(b)(6) is likely to be granted "only in the unusual case in which a plaintiff includes allegations which show on the face of the complaint that there is some insuperable bar to relief." *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir.1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

Motions for a more definite statement under Fed.R.Civ.P. 12(e), are generally disfavored. *Wheeler v. United States Postal Serv.*, 120 F.R.D. 487, 488 (M.D.Pa. 1987). Where information sought by the party moving for a more definite statement is available or properly sought through discovery, the motion should be denied. *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D.Cal.1981).

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

Oceanic's first and second claims for relief attempt to bring M.D. and Abboud under the Racketeer Influenced and Corrupt Organizations Act (hereinafter

RICO). Oceanic specifically alleges that M.D. is an enterprise engaged in illegal racketeering activity and that M.D. and Abboud have committed mail and wire fraud designed to defraud Oceanic. Finally, plaintiff claims that these acts of mail and wire fraud constitute a pattern of racketeering activity.

"Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

Oceanic alleges defendants have violated 18 U.S.C. § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"A violation of § 1962(c) * * * requires (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted).

Defendants assert that Oceanic has failed to allege several essential RICO elements requiring the dismissal of the amended complaint, particularly: (1) failure to plead a RICO enterprise (Brief of defendants at 12); (2) failure to plead requisite predicate acts (Brief of defendants at 7); and (3) failure to plead a RICO conspiracy (Brief of defendants at 14).

■ RICO "proscribes conduct in which one party, the 'person' subject to the statute, acts upon an entity, the 'enterprise,' in such a manner that the enterprise's affairs are conducted through a pattern of racketeering." *Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir.1982) (footnote omitted), *rev'd*

*in part on other grounds*, 710 F.2d 1361 (8th Cir.) *(en banc), cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). While some courts have held that a legal entity or formal enterprise which has actively participated and benefited from a pattern of racketeering activity can be named as both the enterprise and the person, *see United States v. Hartley*, 678 F.2d 961 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983), the majority position, and the one adopted in this circuit and district, is that the RICO "enterprise" cannot also be the RICO "person." *Atlas Pile Driving Co. v. Di Con Fin. Co.*, 886 F.2d 986, 995 (8th Cir.1989); *Bennett v. Berg, supra; Woodruff v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, No. 88-L-314, 1989 WL 224581 (D.Neb. July 14, 1989).

Defendants contend that because M.D. is identified as an enterprise in plaintiff's complaint and named as a defendant, Oceanic has failed to plead that the enterprise and the person are separate and distinct entities.

"Only a person employed by or associated with an enterprise, not the enterprise itself, may violate § 1962(c)." D. Smith & T. Reed, *Civil Rico* ¶ 3.07(1)(a) (1990). "The enterprise is mentioned in * * * [§ 1962(c) ] as the instrument of the person doing the racketeering, and there is no suggestion that the enterprise also may be liable * * *." *Schofield v. First Commodity Corp.*, 793 F.2d 28, 30 (1st Cir.1986).

The *Schofield* court further stated:

The legislative history surrounding RICO adds to our conviction that section 1962(c) does not extend liability to the enterprise. "[T]he legislative history forcefully supports the view that the major purpose of Title IX [including § 1962(c) ] is to address the infiltration of business by organized crime. *United States v. Turkett*, [452 U.S. 576 (1981) ]." If the primary purpose of RICO is to "cope with the infiltration of legitimate businesses", *id.*, it is logical that Congress would have designed section 1962(c) so that it reached the criminal but

protected the victimized enterprise from liability.

*Schofield,* at 30–31.

The Eighth Circuit is in accord. "Section 1962(c), * * * has been interpreted as requiring that the person named as the defendant cannot also be the entity identified as the enterprise." *Atlas Pile Driving,* 886 F.2d at 995 (citing *Bennett,* 685 F.2d at 1061–62.

By seeking RICO damages against M.D., Oceanic has effectively alleged that M.D. is the RICO "enterprise" as well as the RICO "person." Plaintiff's failure to plead that the RICO "enterprise" is a separate entity from the RICO "person" is fatal to its RICO claim. *See Bennett v. Berg, supra; Atlas Pile Driving, supra.* See also *Woodruff v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 709 F.Supp. 181, 186 (D.Neb.1989) (distinction in RICO cases is whether the enterprise and the person may be the same). In its present form, Oceanic's first cause of action should be dismissed.

Defendants also contend that plaintiff's RICO claim is deficient because Oceanic has failed to adequately plead the required predicate acts necessary to state a civil RICO claim. *See* 18 U.S.C. §§ 1961, 1962. Having carefully considered defendant's argument and having reviewed plaintiff's complaint, the Court concludes that plaintiff has adequately pled predicate acts in the form of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, and has done so with sufficient particularity as required by Fed.R.Civ.P. 9(b). *Cf. Flowers v. Continental Grain Co.,* 775 F.2d 1051, 1054 (8th Cir.1985); *AGI–Bluff Manor, Inc. v. Reagen,* 713 F.Supp. 1535, 1548 (W.D.Mo.1989); *Wilson v. Askew,* 709 F.Supp. 146, 152 (W.D.Ark.1989).

## CONSPIRACY TO VIOLATE RICO

■ Plaintiff's second claim for relief contends that Abboud and M.D. conspired, in violation of 18 U.S.C. § 1962(d), to violate § 1962(c). To establish a claim under § 1962(d), a viable claim must exist under § 1962(c). *Swartz v. Philadelphia Nat'l Bank,* 701 F.Supp. 92, 96 (E.D.Pa.1988). The Court has concluded that Oceanic has failed to allege a § 1962(c) action against defendants by virtue of its allegation that M.D. is the RICO person as well as the RICO enterprise. Consequently, plaintiff's conspiracy claim under § 1962(d) fails as well.

■ In addition, plaintiff's conspiracy claim is deficient because the complaint fails to allege that there was an agreement to engage in conduct that would amount to a RICO violation. *See United States v. Lemm,* 680 F.2d 1193, 1203 (8th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 495 (6th Cir. 1990); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25–26 (2d Cir. 1990) (citing *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989)). *See also* D. Smith & T. Reed, *Civil RICO* ¶ 7.02[6][a][ii] (1990). In its present form, plaintiff's conspiracy claim should be dismissed.

## CABLE COMMUNICATIONS POLICY ACT

■ Oceanic's third claim for relief alleges defendants' activities constitute the unauthorized reception of cable service in violation of the Cable Communications Policy Act of 1984, 47 U.S.C. § 553(a)(1). Sections 553(a)(1)–(2), provide:

(1) No person shall intercept or receive or assist in intercepting or receiving any communication service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communication service offered over a ca-

ble system in violation of subparagraph (1).

47 U.S.C. § 553(a)(1)–(2). Title 47, U.S.C. § 553(c) provides a party with a private right of action for the violation of § 553(a)(1).

Oceanic alleges that "Abboud and M.D. did, jointly and severally, willfully and intentionally intercept or receive or assist in intercepting or receiving communications services offered over a cable system, to wit, those supplied by Oceanic, without authority by Oceanic or as otherwise specifically authorized by law, all in violation of 47 U.S.C. § 553(a)(1)." (Plaintiff's first amended complaint at ¶ 34).

Defendants maintain that this claim for relief is deficient because plaintiff has pled no facts that show M.D. and Abboud possess the requisite intent to violate § 553. However, Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

Defendants also point to the exculpatory language contained in Exhibit "B" of the first amended complaint as evidence of lack of intent necessary to state a cause of action. Exhibit "B" states: "DECLARATION OF AUTHORIZED USE—I * * * declare under penalty of perjury that all products purchased * * * will be used on cable TV systems with proper authorization from local officials or cable company officials in accordance with all applicable federal and state laws."

Evidence of exculpatory language attempting to limit a seller's liability for the purchaser's illegal use of private boxes only provides evidence of an affirmative defense, rather than a serving to negate guilt. *United States v. Gardner*, 860 F.2d 1391, 1395 (7th Cir.1988), *cert. denied*, 490 U.S. 1023, 109 S.Ct. 1751, 104 L.Ed.2d 187 (1989).

Viewing the allegations in the amended complaint in the light most favorable to plaintiff, the Court concludes that it does not appear beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Defendants' motion to dismiss Oceanic's third claim for relief should be denied.

## FEDERAL COMMUNICATIONS ACT

■ Plaintiff's fourth claim for relief alleges a cause of action under the Federal Communications Act of 1934, 47 U.S.C. § 605(a). Section 605(a) proscribes any person from divulging or publishing the existence, contents, substance, purport, effect, or meaning of any interstate or foreign communication by wire or radio. 47 U.S.C. § 605(a). Defendants contend that § 605(a) does not encompass the interception of cable television transmissions. It is well established, however, that § 605(a) includes the theft of cable television services. *Cablevision Systems Corp. v. DePalma*, No. 87–3528, 1989 WL 8165 (E.D.N.Y. Jan. 17, 1989); *Ciminelli v. Cablevision*, 583 F.Supp. 158, 161 (E.D.N.Y.1984). It is equally well established that § 605(a) prohibits the sale and distribution of decoders with the intent that they be used for the unauthorized reception of cable or subscription television programming. *See Cablevision Systems Corp., supra; ON/TV of Chicago v. Julien*, 763 F.2d 839 (7th Cir. 1985); *National Subscription Television v. S & H TV*, 644 F.2d 820 (9th Cir.1981); *Subscription Television of Greater Washington v. Kaufmann*, 606 F.Supp. 1540 (D.D.C.1985); *Porter County Cable Co. v. Moyer*, 624 F.Supp. 1 (N.D.Ind.1983).

It does not appear beyond doubt that plaintiff can prove no set of facts in support of its fourth claim for relief, and defendants' motion to dismiss this claim should be denied.

## WIRE INTERCEPTION OF ORAL COMMUNICATIONS

■ Plaintiff's fifth and sixth claims for relief are predicated on 18 U.S.C.

§§ 2511(1)(a),[1] 2512(1).[2]   Both § 2511 and § 2512 are criminal in nature.   Oceanic claims a private right of action for the violation of these statutes by virtue of 18 U.S.C. § 2520, which provides, in relevant part, that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [18 U.S.C. §§ 2510–2521], may in a civil action recover from the person or entity which engaged in that violation."   18 U.S.C. § 2520.

In support of their motion to dismiss, defendants cite the Court to cases holding that § 2520 provides no private right of action to cable companies, such as Oceanic, against parties engaged in the sale of descrambling equipment.   In *Cox Cable Cleveland Area, Inc. v. King*, 582 F.Supp. 376 (N.D.Ohio 1983), a cable company, alleging a violation of § 2511(1)(a), attempted to recover against a seller of descrambling equipment by virtue of § 2520.   The court held that, as a matter of law, the cable company could not pursue a cause of action based upon this combination of statutes.   The court grounded its decision in the legislative history of §§ 2510–2521, noting that Congress intended only to protect private communications from illegal surveillance and wiretapping operations.   The court concluded that the unlawful interception of cable television signals did not fall within the scope of the statutory intent. *Id.* at 382.

Defendants also cite the Court to *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir. 1985), wherein a plaintiff sued a company that manufactured and sold telephone tapping devices to the plaintiff's estranged husband, who then used the device to record the plaintiff's conversations.   The plaintiff claimed the defendant was civilly liable under § 2512 by virtue of § 2520, or in the alternative, by the operation of § 2520 alone.

At the time *Flowers* was decided, § 2520 provided,

Any person whose wire or oral communication is intercepted, disclosed or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person.

18 U.S.C. § 2520 (as amended Pub.L. 91–358.   Title II, § 211(c), July 29, 1970).

The Fourth Circuit reasoned that § 2520 limited the scope of the private right of action to only those persons who intercept or procure another to intercept the communications protected by §§ 2510, *et seq.*   The court held that a manufacturer or seller cannot be construed as one who "intercepts, discloses or uses, or procures any other person to intercept, disclose or use," a wire communication in violation of §§ 2510, *et seq.*   *Flowers*, 773 F.2d at 589–90 (emphasis in original).   The court con-

---

**1.**  18 U.S.C. § 2511(1)(a), provides, in pertinent part:

> (1) Except as otherwise specifically provided in this chapter any person who—
>> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications;
> shall be punished * * *.

18 U.S.C. § 2511(1)(a).

**2.**  Oceanic's amended complaint specifically alleges defendants violated 18 U.S.C. §§ 2512(1)(a)–(b), which provide, in relevant part:

> (1) Except as otherwise specifically provided in this chapter, any person who intentionally—
>> (a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications;
>> (b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce;
>
> *   *   *   *   *   *
>> shall be fined * * * or imprisoned * * * or both.

18 U.S.C. §§ 2512(1)(a)–(b).

cluded that "procure" within the meaning of § 2520 meant the creation of an agency relationship. *Id.* at 590. "We do not believe the selling of an [interception] device rises to the level of active participation that is contemplated by Congress' use of the term 'procures.'" *Id.* The court also considered and rejected plaintiff's claim that a private right of action against sellers and manufacturers could be implied under § 2512. *Id.* at 589.

Section 103 of the Electronic Communications Privacy Act of 1986, amended § 2520 by eliminating the "or procures another person" language of the statute and incorporating violations involving the interception, disclosure, or intentional use of electronic communications. S.Rep. No. 541, 99th Cong., 2d Sess. 26–27, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555, 3580–81. Section 2520, as amended, provides, in part, that:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520. Clearly, § 2520 only confers a private cause of action upon persons when the action is brought against parties that have violated the provisions of §§ 2510–2521.

A plaintiff may bring a civil action under § 2520 whether or not the defendant has been subject to criminal prosecution for the acts complained of, but in the absence of such prosecution and conviction, it is the plaintiff's burden to establish that the requirements of this section are met. S.Rep. No. 541, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555, 3581.

In *Greek Radio Network, Inc. v. Vlasopoulos,* 731 F.Supp. 1227 (E.D.Pa.1990), a case decided after the 1986 amendments to §§ 2510–2521, the court relied upon *Cox Cable* in concluding that § 2511 did not protect radio transmissions, thereby foreclosing the plaintiff from proceeding under § 2520. In *Greek Radio,* a radio station

owner operator brought suit under RICO, the Communications Act of 1934, as amended, 47 U.S.C. § 605, and 18 U.S.C. §§ 2510–2521, against individuals allegedly engaged in the business of illegally modifying radio units, for a fee, to allow unauthorized listeners to obtain and enjoy programming on subcarrier frequencies that could not be received by the general public.

On defendants' motion to dismiss for failure to state a claim, the district court concluded that the radio station owner operator had not stated a claim under § 2520, concluding that §§ 2511 and 2520 were related solely to wiretapping and surveillance and did not confer a cause of action for the interception of radio transmissions. The court noted that other courts had closely examined the legislative history of §§ 2510, *et seq.,* and had concluded that Congress did not intend to confer upon cable television system operators a cause of action against sellers of converter/decoder devices that allowed the unauthorized reception of cable operators' private signals. *Greek Radio,* 731 F.Supp. at 1223 (citing *Cox Cable, supra*).

> The [Cox Cable] court concluded that all the cases construing § 2511 * * * "were concerned with the 'bugging' or 'wiretapping' of telephones, and telephone conversations, use of pen registers, and other types of electronic *surveillance.* The activity common to these cases was the defendant's efforts to surreptitiously learn the contents of private, business, or personal communications made over the telephone; not the unlawful interception of cable television programming."

*Id.* at 1233 (quoting *Cox Cable,* 582 F.Supp. at 382) (Emphasis in original).

The *Greek Radio* court also declined to accept the plaintiff's argument that defendants' act fell within the "procuring" element of § 2511. The court stated: "Defendants' acts cannot be said to constitute 'procuring' another person or persons to violate the statute." *Id.* In support of its conclusion, the court relied upon *Flowers, supra,* wherein the Fourth Circuit held that "procure," within the context of § 2512 did not extend the scope of the section to reach

the conduct of sellers or manufacturers but, rather, " 'was intended to reach the principal who enlists the aid of an agent to do the actual interception.' " *Id.* at 1233–34 (quoting *Flowers,* 773 F.2d at 590 (citations omitted)).

The Court notes that the 1986 amendments to § 2511(1)(a) did not alter the "procuring" language upon which the *Flowers* and *Greek Radio* courts based their decisions. Pub.L. 99–508, Title I, §§ 101(c)(1)(A), (f)(1), 100 Stat. 1849–1853. The Court concludes that § 2511(1)(a) does not apply to defendants as alleged sellers of descrambling devices. Consequently, plaintiff has no private right of action under § 2520, and its fifth claim for relief should be dismissed.

The 1986 amendments to §§ 2512(1)(a)–(b) extended the statute's scope to prohibit the selling of devices capable of being used in the interception of electronic communications. Pub.L. 99–508, Title I, §§ 101(c)(1)(A), (f)(2), 100 Stat. 1851, 1853. Under § 2512, " 'intercept[ion]' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Electronic Communication" is defined as "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce * * *." 18 U.S.C. § 2510(12).

Although *Greek Radio* failed to consider the effect of the 1986 amendments on § 2512, the United States Court of Appeals for the Tenth Circuit has concluded that the sale of "cloned" satellite television descramblers are prohibited by § 2512. In *United States v. McNutt,* 908 F.2d 561 (10th Cir.1990), a defendant appealed his conviction for conspiracy to manufacture, possess, assemble, or sell descrambler modules. The descramblers sold by plaintiff were to be used by owners of home satellite dishes to intercept scrambled transmissions from pay television programmers to cable companies, who in turn sold the programming to its subscribers for a service charge. *Id.* at 562–63.

Defendant argued that the legislative history of § 2512 clearly established that satellite television broadcasts were not encompassed under the statute as electronic communications. In rejecting defendants argument, the court noted that the legislative history of § 103 of the Electronic Communications Privacy Act of 1986 was ambiguous, but it concluded, however, that:

satellite transmissions contain sound and images and are carried via radio waves; therefore they constitute electronic communications under § 2510(12). Satellite television descramblers also are electronic devices which effectuate the interception of electronic communications. Because the providers of pay television programming are unaware that their signals are being intercepted by cloned descramblers, such interception is surreptitious. Although some legislative history to the contrary exists, the clarity of the statutory language contrasted with the ambiguity in the legislative history obliges us to follow the plain meaning of the statute.

*Id.* at 564–65.

Although the descramblers sold in *McNutt* were used to intercept signals directly from a satellite transmission rather than to intercept signals transmitted in scrambled form from a cable company to non-paying subscribers, the Court finds the rationale of the Tenth Circuit persuasive. As previously noted, the 1986 amendments to §§ 2510–2521 broadened § 2512 to prohibit the selling of devices capable of use in the surreptitious acquisition of electronic communications. Plaintiffs allege that the "signals received by Oceanic subscribers are carried by common carrier and constitute interstate radio and wire communications," thereby constituting electronic communications under § 2510(12). Plaintiff's amended complaint at ¶ 14. Descramblers are electronic devices which effectuate the interception of electronic communications. *McNutt,* at 565. Following the rationale of the Tenth Circuit in *McNutt,* the interception by non-paying subscribers is surrepti-

tious. *Id.* In addition, the legislative history of the Communications Act of 1986 indicates that Congress intended to address the malicious interference with satellite transmissions and home viewing of private satellite transmissions. S.Rep. No. 541, 99th Cong., 2d Sess. 6–7, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555, 3560–61.

For the foregoing reasons, the Court cannot conclude beyond doubt that plaintiff has failed to state a cause of action under § 2520 for the alleged violation of §§ 2512(1)(a)–(b). Defendants' motion to dismiss plaintiff's sixth cause of action should be denied.

## PENDENT TORT CLAIMS

■ Oceanic's remaining claims for relief assert various pendent claims, including tortious interference with contractual relations, tortious interference with prospective advantage, tortious interference with lawful business, and unfair competition.

■ In a diversity action in federal court, a district court is bound to follow the choice of law rules of the state in which it sits in order to determine which state's substantive law applies. *J & B Co. v. Bellanca Aircraft Corp.*, 911 F.2d 152, 153 (8th Cir.1990); *Birnstill v. Home Sav. of America*, 907 F.2d 795, 797 (8th Cir.1990). Nebraska appears to follow the approach of Restatement (Second) of Conflicts of Laws to determine which state's substantive law applies. *Harper v. Silva*, 224 Neb. 645, 647–48, 399 N.W.2d 826, 828 (1987) (quoting *Restatement (Second) of Conflict of Laws* § 146 (1971)). Under the analysis set forth in the *Restatement (Second) of Conflict of Laws* § 145 (1971), the Court concludes that Hawaii tort law governs plaintiff's pendent claims set forth in Claims 7 through 11 of its complaint.

■ Under Hawaii law, the elements of a tortious interference with contractual relations are: (1) contract between plaintiff and third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to

breach the contract; (4) absence of justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff. *Burgess v. Arita*, 5 Haw.App. 581, 594, 704 P.2d 930, 939 (1985). In order to establish a cause of action against a third party for intentional interference with a contractual right under Hawaii law, it must be shown that the third party acted with intent and legal malice, *i.e.*, "the intentional doing of the harmful act without legal or social justification or excuse, or, in other words, the willful violation of a known right." *Chow v. Alston*, 2 Haw.App. 480, 484, 634 P.2d 430, 434 (1981).

Oceanic's seventh claim for relief alleges that the defendants, "with purposeful intent to interfere with the Subscriber Agreements induced, conspired with, and aided and abetted an as of yet undetermined number of subscribers from performing their part of their respective Subscription Agreements." (Plaintiff's first amended complaint at ¶ 50).

In its eighth claim for relief, plaintiff maintains that defendants

with purposeful intent to interfere with [the contracts between Oceanic and each of its premium program suppliers], induced, conspired with, and aided and abetted an as of yet undetermined number of Oceanic's subscribers not to perform their respective Subscription Agreements, thereby preventing and obstructing Oceanic and its premium program suppliers from performing their respective part of the * * * contracts.

(Plaintiff's first amended complaint at ¶ 55).

Oceanic's ninth claim for relief alleges that "[d]efendants, with purposeful intent to interfere with Oceanic's prospect selling [sic] such services, provided pirate boxes to an as of yet undetermined number of subscribers or prospective subscribers to Oceanic's services." (Plaintiff's first amended complaint at ¶ 62).

In its tenth claim for relief, plaintiff contends that

Defendants, with purposeful intent to interfere with Oceanic's business, misap-

propriated or induced, conspired with, aided and abetted, or otherwise assisted subscribers or prospective subscribers to Oceanic's services to misappropriate premium programming services provided by Oceanic to subscribers and prospective subscribers. Defendant used such services or induced, conspired with, aided and abetted, or otherwise assisted subscribers or prospective subscribers to such services, for its own benefit to the depravation of Oceanic.

(Plaintiff's first amended complaint at ¶ 68).

Oceanic's eleventh claim for relief purports to seek recovery against M.D. and Abboud for alleged unlawful conduct constituting unfair competition. (Plaintiff's first amended complaint at ¶ 71).

In reviewing a motion to dismiss, the Court is reminded that:

> The only function left to be performed by the pleadings alone is that of notice. Thus, pleadings under the rules simply may be a general summary of the parties' position that is sufficient to advise the other party of the event being sued upon, to provide some guidance as to what was decided for purposes of res judicata, and to indicate whether the case should be tried to the court or to a jury. No more is demanded of the pleadings than this.

C. Wright & A. Miller, *Federal Practice & Procedure* § 1201 (1990).

Viewing the allegations in the amended complaint in the light most favorable to plaintiff, the Court concludes that it does not appear beyond doubt that Oceanic can prove no set of facts in support of its claims for relief. Defendants' motion to dismiss plaintiff's seventh through eleventh claims for relief should be denied.

## VIOLATIONS OF HAWAII REVISED STATUTES § 708–8200

Oceanic's twelfth claim for relief alleges that M.D. and Abboud aided and abetted in the violation of Hawaii Rev.Stat. § 708–8200. Plaintiff's thirteenth claim for relief alleges that defendants directly violated § 708–8200.

Section 708–8200 provides:

(1) A person commits cable television service fraud in the first degree if the person knowingly:

(a) Distributes written instructions or plans to make or assemble a cable television service device and knows that the written plans or instructions are intended to be used to make or assemble a device to obtain cable television service without payment of applicable charges; or

(b) Distributes a cable television service device and knows that the device is intended to be used to obtain cable television service without payment of applicable charges.

Hawaii Rev.Stat. § 708–8200.

Defendants contend that Oceanic has no private right of action for either a violation of § 708–8200 or aiding and abetting in the violation of § 780–8200.

▪ In determining whether a criminal statute creates a private right of action for damages in favor of a person injured by the proscribed conduct, a court must consider: (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is legislative intent to create or deny such a remedy; and (3) whether such a remedy is consistent with the underlying purpose of the legislative scheme. *Reliable Collection Agency, Ltd. v. Cole*, 59 Haw. 503, 507, 584 P.2d 107, 109 (1978).

> The legislative intent to grant or withhold a private right of action for the violation of a statute, or the failure to perform a statutory duty, is determined primarily from the former language of the statute. The nature of the evil sought to be remedied, and the purpose the statute was intended to accomplish, may also be taken into consideration. In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability. 73 Am.Jur.2d, *Statutes* § 432.

*Wick Realty Inc. v. Napili Sands Maui Corp.*, 1 Haw.App. 448, 453, 620 P.2d 750, 754 (1980).

The only argument plaintiff advances in support of its contention that a private right of action exists for the violation of § 708–8200 is that cable television subscribers are the intended beneficiaries of the statute. Even if the Court were to assume that § 708–8200 was enacted to provide protection for cable service providers, the Court cannot conclude that Oceanic has a private right of action under the statute. Aside from the obvious fact that § 708–8200 is silent about the existence of a private right of action, the legislative history of the statute provides no evidence that the Hawaii legislature intended to create a private right of action. Rather, the legislative history demonstrates that the purpose of the statute is solely criminal in nature. *See* Hawaii S.Conf.R. No. 2151; Hawaii S.Conf.R. No. 540; Hawaii S.Conf.R. No. 893. In addition, statutes related to § 708–8200 do not infer that a private right of action exists. *See* Hawaii Rev.Stat. § 708–8204 (forfeiture of telecommunications service device and cable television service device). The Court concludes that the Hawaii legislature did not intend to grant a private right of action for the violation of § 708–8200. Plaintiff's twelfth and thirteenth claims for relief should be dismissed for failure to state a claim upon which relief can be granted.[3]

An order in conformity with this memorandum opinion will be entered this date.

---

3. Defendants also address a purported conversion claim in plaintiff's first amended complaint. The Court notes, however, that plaintiff does not address defendants' argument in favor of the dismissal of this purported claim, and as such, the Court will not read plaintiff's amended complaint as alleging a conversion claim.